Rockingham,
No. 5418.

BURTON DOW & a. v. MARGARET LARRABEE.

Argued November 4, 1965.
Decided February 28, 1966.

*Shute & Engel* ( *Mr. David C. Engel* orally ), for the plaintiffs.

*Calderwood, Silverman & Ouellette* ( *Mr. Louis H. Silverman* orally ), for the defendant.

DUNCAN, J. These actions arise out of injuries suffered in Salisbury, Massachusetts on February 4, 1956 by the minor child Brenda, then aged four, when she fell from the rear seat of the defendant's automobile while being transported from Salisbury to Seabrook, New Hampshire, the domicile of all parties con-

cerned. The plaintiff and a younger brother had been staying with friends in Salisbury, and as a favor to the plaintiff's mother the defendant, a neighbor, undertook to drive the mother to Salisbury to get the children. The children were placed in the rear seat by the mother, who closed the right rear door of the automobile by "giving it a bang." The defendant operated the vehicle, while the plaintiff's mother rode in front, sitting sideways so that she could see the children in the rear. The plaintiff stood behind her, and at some point in Salisbury on the return trip the right rear door was found to be open, and the plaintiff missing from the vehicle.

The plaintiff's motion that the rights and duties of the parties be determined in accordance with the law of New Hampshire was denied subject to exception, and presents the question of whether the law of this jurisdiction or of Massachusetts is to govern. It has long been the law of this state that the law of the place where the tort occurred and where the plaintiff's injuries were suffered, in this instance Massachusetts, should control in determining the liability of the defendant. *Beacham* v. *Portsmouth Bridge*, 68 N. H. 382. Under Massachusetts law the defendant can be held liable to a guest for gross negligence only. *McAllister* v. *Maltais*, 102 N. H. 245; *Thompson* v. *Thompson*, 105 N. H. 86, 89.

In the *Thompson* case, although we held that the interspousal rights and liabilities of husband and wife were to be determined according to the law of their domicile, we stated that the law of Massachusetts where the tort was committed "should continue to determine the applicable standard of care." *Ib.*, 89. The plaintiffs, relying upon recent cases such as *Babcock* v. *Jackson*, 12 N. Y. 2d 473, and *Wilcox* v. *Wilcox*, 26 Wis. 2d 617, urge that proper application of the rule stated by *s.* 379 of the Restatement (Second), Conflict of Laws (Tent. Draft No. 8) requires that this state rather than Massachusetts be considered the "state of most significant relationship" in determining the rights of the parties, because it is the state "where the relationship . . . between the parties is centered." *Ib.*, *s.* 379 (2) (d). In this connection we note that in Tentative Draft No. 9 of the same Restatement (April 24, 1964) *s.* 379 remains unchanged. We also appreciate that Draft No. 9 first suggested under *s.* 379, *comment* d, that the circumstances under which a guest passenger has a right of action against a driver "will be determined by the local law of their common domicil, *if at least* this is the state from

which they departed on their trip and that to which they intended to return, rather than by the local law of the state where the accident occurred." ( Emphasis supplied ). See also, Guenther, Changing Choice of Law Rules, 7 N. H. B. J. 19, 26-27; Comment, 77 Harv. L. Rev. 357.

In deciding this question, as indicated in our recent decision of *Johnson* v. *Johnson*, 107 N. H. 30 ( decided January 31, 1966 ), we are disposed to consider the competing considerations which may constitute "important contacts" involved in the facts presented. Tentative Draft No. 9, *supra*, *s.* 379 ( 2 ). While New Hampshire was the domicile of the parties to the action, Massachusetts was the place where the injury occurred, and the place where the conduct which gave rise to it occurred. *Ib.*, *s.* 379 ( 2 ) ( a ), ( b ). So also, Massachusetts was the place where the relationship of host and guest arose between the minor plaintiff and the defendant, and where that relationship was centered up to the time of the accident. *Id.*, *s.* 379( 2 ) ( d ).

As pointed out in *comment* d to section 379 of the Restatement ( Tentative Draft No. 9 ): "A state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there. So, subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor's conduct was tortious, that is to say, whether the actor's conduct satisfied required standards of behavior or, on the other hand, was potentially liability-creating, and whether the interest affected by the actor's conduct was entitled to legal protection." See also, *s.* 379a, *comment* e.

On the facts in this case, we see no sufficient reason to establish an exception to this commonly accepted principle. In the *Thompson* and *Johnson* cases, *supra*, the relationship of the parties was that of husband and wife. In cases involving intrafamily relationships, domicile may well be a weighty consideration in determining what law shall govern the rights and liabilities of the parties. ( Tentative Draft No. 9, *supra*, *s.* 390g ). *Johnson* v. *Johnson*, *supra*.

The relationship of host and guest however is usually temporary and fleeting, and its incidents of minor consequence as compared with those of marriage or parenthood. It cannot be denied that Massachusetts has an interest in regulating the standards of behavior of persons traveling upon its highways, and the liability which shall result for injuries suffered there in con-

sequence of such behavior. This interest appears to us to be more significantly related to this accident than any interest which this state may have had because the parties who were traveling on Massachusetts highways and entered into a host-guest relationship there were residents of this state. See *Dym* v. *Gordon*, 16 N. Y. 2d 120. After careful review of the competing considerations we conclude that the plaintiffs' motion was properly denied.

The question next presented is whether the Trial Court erred in granting the motion for a nonsuit. The plaintiffs' evidence tended to prove that approximately a month before the accident the defendant had taken her 1946 DeSoto sedan to a garage for repairs to the lock of the right rear door. A garage owner testified that he then "repaired the right rear door, door lock, so that it would close." There was also evidence that two to three weeks after the accident the same door was ajar, and that the defendant's daughter "opened the door and then gave a good bang, then she pulled on the door and it came open. Then she banged it again, when she tried it the next time it stayed closed."

According to the testimony it was the plaintiff's mother who had closed the door on the day of the accident after placing her children in the rear seat; and the plaintiff stood behind the mother as the vehicle was driven over a "bumpy," curvy road, known as the True Road. After it reached the Lafayette Highway and had traveled perhaps a half mile, the mother felt cold air on her back, and discovered that the right rear door was open, and that the plaintiff was missing. The door hinged at the back, and could be opened from within by raising the door handle. The mother testified that she did not recall seeing the plaintiff move about in the car and did not know whether or not the child had "pulled up the handle" or "opened the door herself." There was no evidence to warrant a finding that the door failed to operate properly between the time it was repaired and the date of the accident, or that the defendant was aware that it was defective, and should have warned the plaintiff and her mother, or taken other suitable action to avoid injury in case the door opened.

Considering the record as a whole, the evidence construed most favorably to the plaintiff did not warrant a finding that the accident was caused by the gross negligence of the defendant within the meaning of the law of Massachusetts. *McAllister* v. *Maltais*, 102 N. H. 245, *supra*, and cases cited. See *Shepard* v. *Roussel*, 341 Mass. 730; Massachusetts Practice, Martin & Hennessey,

Automobile Law & Practice, *ss.* 392-398, 405 ( 1954 ). The evidence to the exclusion of which the plaintiffs duly excepted was not such as to alter the foregoing conclusion. Accordingly the order is

*Judgment for the defendant.*

LAMPRON, J., dissented; the others concurred.

LAMPRON, J., *dissenting*: I agree with the majority opinion that the state of most significant relationship should determine the rights of the parties in this case. I disagree, however, with its holding that on the issue of the standard of conduct which should govern their rights and liabilities arising from their status as guest and host Massachusetts and not New Hampshire is the state where this relationship is centered.

In our recent decision of *Johnson* v. *Johnson,* 107 N. H. 30 ( decided January 31, 1966 ), this court applying the Massachusetts rule of interspousal immunity denied to a wife domiciled there with her husband the right to recover damages in a tort action against him brought in New Hampshire based on an accident which occurred here. That decision was reached after considering the respective law on that issue, that of Massachusetts which bars such an action and that of New Hampshire which permits recovery, and the effect on those laws of the result reached by this court.

In like manner consideration should be given in this case to the effect of applying our law which permits a guest to recover for his host's lack of ordinary care instead of the Massachusetts law which denies recovery to a guest unless the host is guilty of gross negligence. The latter law is not statutory as is the case in most states having such a rule. On the contrary it originated when the courts of that state applied the rules of liability of a gratuitous bailee to the conduct of one who undertakes the gratuitous transportation of a passenger in his automobile. *West* v. *Poor,* 196 Mass. 183; *Massaletti* v. *Fitzroy,* 228 Mass. 487.

Surely it cannot be considered a disservice to Massachusetts to impose on a New Hampshire host driving a New Hampshire guest in that commonwealth the duty to use due care in the operation of his automobile on their highways. Furthermore, as in the case of a husband and wife ( *Johnson* v. *Johnson, supra* ), this makes for a simple rule by which, in most cases, the duty of the

host to his guest would remain constant as they travel from state to state instead of being subject to change at each state boundary for no other reason, in many instances, than pure geography. Such a rule would not affect in any way the laws regulating the host's manner of driving in each state journeyed as this would be governed by the local rules of the road. *Wilcox* v. *Wilcox* 26 Wis. 2d 617, 631; *Freund* v. *Spencer,* 260 N. Y. S. 2d 149, 151 ( Sup. Ct. ).

Plaintiff Brenda, then 4 years of age, her parents, and the defendant were all residents of Seabrook in this state at the time of this one car accident. The automobile involved was registered and garaged in New Hampshire. The mishap occurred in the course of a trip which began and was to end in this state. Its purpose was to pick up Brenda and a younger brother who were visiting in adjoining Salisbury, Massachusetts and return them to their home in Seabrook. The accident happened approximately one mile from the New Hampshire line. These facts demonstrate conclusively, in my opinion, that the relationships of these parties were centered in New Hampshire. *Babcock* v. *Jackson,* 12 N. Y. 2d 473.

Massachusetts having no overriding interest in having its law on the issue of guest-host liability applied under those circumstances, the guest should be allowed recovery for lack of due care by the host in accordance with the principles applied by this court in *Thompson* v. *Thompson,* 105 N. H. 86 and *Johnson* v. *Johnson,* 107 N. H. 30. I would so hold in this case and sustain plaintiffs' exceptions to the denial of their motions to this effect. *Babcock* v. *Jackson, supra; Steinberg* v. *Fischman,* 260 N. Y. S. 2d 403; Restatement ( Second ), Conflict of Laws ( Tentative Draft No. 9 ), *s.* 379, *comment* ( 3 ) ( d ) Goodrich-Scoles, Conflict of Laws, *s.* 94, *p.* 174 ( 1964 ); 63 Colum. L. Rev. 1212, 1245, 1249, 1254.

I agree with the majority opinion when it says that considering the record as a whole, the evidence construed most favorably to the plaintiff did not warrant a finding that the defendant was grossly negligent within the meaning of the law of Massachusetts. However applying the standard of ordinary negligence to defendant's conduct I would hold that her motion for a nonsuit was improperly granted and remand the case for a new trial for the reasons hereinafter stated.

There was evidence that about one month before the accident the defendant brought her ten-year-old car to a garage whose

owner testified that as a result of a discussion with her he repaired the lock on the right rear door "so it would close." Plaintiff's mother testified that two or three weeks after the accident the same right rear door of defendant's car "was ajar, Mrs. Larrabee's daughter opened the door and then she gave a good bang, then she pulled on the door and it came open. Then she banged it again, when she tried it the next time it stayed closed." There was no evidence the condition of the automobile had changed since the accident. On this evidence the jury could properly find that the defendant knew the lock on that right rear door had not been operating properly about a month before the accident; that because it was operating improperly a few weeks after the accident it probably was in that condition at the time of the accident; and that the defendant knew or should have known of this defect, advised plaintiff's mother of it and taken it in consideration in the operation of her car. *Prokey* v. *Hamm,* 91 N. H. 513, 515; *Marcoux* v. *Collins,* 94 N. H. 345, 347; *Curtin* v. *Benjamin,* 305 Mass. 489; 2 Wigmore Evidence ( 3d *ed.* ) *s.* 437, *p.* 413.

There was further evidence that Brenda's mother from her position in the front seat could have seen her 4-year-old daughter Brenda if she had moved around and that she did not recall her doing so while they were riding. The mother testified that she banged the right rear door shut after placing the children in the car and that during the trip it was found opened and Brenda was on the highway. To open this door, which opened from the front towards the back, the inside handle would have to be pulled up. I would hold that the jury could find on this evidence that Brenda's fall was caused by the opening of the right rear door due to a defect in its mechanism. *Zellers* v. *Chase,* 105 N. H. 266, 268; *Manning* v. *Freeman,* 105 N. H. 272, 275.